**In the Matter of L. C., a minor, Appellant,**

v.

**STATE of Alaska, Appellee.**

**Nos. 4401/4411.**

Supreme Court of Alaska.

Jan. 30, 1981.

John B. Salemi, III, Norman S. Besman and Deborah Paquette, Asst. Public Defenders, and Brian Shortell, Public Defender, Anchorage, for appellant.

David Mannheimer, Asst. Atty. Gen., Anchorage, and Avrum M. Gross, Atty. Gen., Juneau, for appellee.

Before RABINOWITZ, C. J., and CONNOR, BOOCHEVER, BURKE and MATTHEWS, JJ.*

OPINION

CONNOR, Justice.

These consolidated appeals present questions concerning procedures to be followed in a juvenile delinquency case.

Having previously declared L.C. delinquent for a drug offense, the superior court ordered her institutionalized in October, 1976, when she was fifteen years old. She was placed in McLaughlin Youth Center in Anchorage. Following her release from McLaughlin at the beginning of July, 1978, she was put on probation and placed in the Mary Johnson House (Long House), an approved juvenile "halfway house" also in Anchorage. On July 10, L.C. failed to return to this house by curfew time, and did not return the next day. As a result her caseworker in Kenai filed a request for her detention and a petition to modify or revoke her probation. L.C. was found and detained on July 14. She testified that she had been raped on the 10th by a man who had given her a lift in his car, and had subsequently gone to her brother's and stayed there.

After a hearing on July 20, the superior court revoked L.C.'s probation and ordered her to be reinstitutionalized. On July 26, a

* This case was submitted to the court for decision prior to Justice Boochever's resignation.

classification committee of the Division of Corrections, with L.C. present and represented by counsel, assigned her to the Excelsior School for Girls in Colorado. L.C. moved for postconviction relief in October, which the court denied after a hearing. She now appeals both the July order of institutionalization and the denial of her motion for postconviction relief.[1]

The governing statute in this case is AS 47.10.080(b), as it existed in 1976:

"(b) If the court finds that the minor is delinquent, it shall

(1) order the minor committed to the Department of Health and Social Services for an indeterminate period of time not to extend past a specified date or in any event past the day the minor becomes 19, except that the department may petition the court for continued supervision for an additional one-year period for minors who have not responded to treatment; the department shall place the minor in the juvenile facility which the department considers appropriate and which may include a juvenile correctional school, detention home, or detention facility; the minor may be released from placement or detention and placed on probation on order of the court and may also be released by the department, in its discretion, under § 200 of this chapter; or

(2) order the minor placed on probation, to be supervised by the department, and release him to his parents, guardian, or a suitable person; if the court orders the minor placed on probation, it may specify the terms and conditions of probation; the probation may be for an indeterminate period of time, not to extend past a specified date and in no event past the day the minor becomes 19, except that the department may petition the court for continued supervision for an additional one-year period for minors who have not responded to treatment."[2]

Pursuant to subsection (1), L.C. in July, 1976, was committed to the custody of the department for an indeterminate period. She was ordered institutionalized "until released, upon a showing by an officer of the department ... that the minor has completed a program of rehabilitation and has been amenable thereto." As noted, the department released L.C. to the Long House in July of 1978.

L.C. claims that she did not receive a disposition hearing, required by Alaska Rule of Children's Procedure 12(a), in connection with her probation revocation. That rule reads:

"*Phases of Hearing.* The child hearing consists of two phases—the adjudicative phase and the dispositive phase.

(1) *Adjudicative Phase.* The adjudicative phase determines the issue of delinquency or dependency, or both, or need of supervision, according to allegations of the petition for adjudication. The issues may be determined either by the admission or confession of the party or by the taking of evidence.

(2) *Dispositive Phase.* The dispositive phase consists of the measures taken and

---

1. The state has expressed reservations about the propriety of L.C.'s invocation of Alaska R.Crim.P. 35(b), the basis for postconviction relief. The state did not pursue this point, however, since L.C.'s direct appeal raises the same issues as her appeal of the denial of her Rule 35 motion. We therefore will not discuss the Rule 35 question.

2. AS 47.10.080(b) was amended in 1977. Among other changes, not relevant here, subsection (3) was added, which reads:

"(3) order the minor committed to the department and placed on probation, to be supervised by the department, and release him to his parents, guardian, other suitable person, or suitable nondetention setting such as a family home, group care facility, or child care facility, whichever the department considers appropriate to implement the treatment plan of the predisposition report; if the court orders the minor placed on probation, it may specify the terms and conditions of probation; the department may transfer the minor, in his best interests, from one of the probationary placement settings listed in this paragraph to another, and the minor, his parents or guardian and attorney are entitled to reasonable notice of the transfer; the probation may be for a period of time, not to exceed two years and in no event extend past the day the minor becomes 19, except that the department may petition for and the court may grant in a hearing."

the orders issued by the court with respect to the child or his parents, guardian, or custodian, designed to correct any undesirable situation found in the adjudicative phase."

The state responds that L.C. was not entitled to a disposition hearing and, if she was, she received such a hearing from the classification committee.

In resolving this dispute, we must first determine the nature of L.C.'s conditional freedom following her release from McLaughlin. Since it was the department which authorized L.C.'s release from institutionalization at McLaughlin, and placed her at Long House, we cannot accept L.C.'s argument that she was on court-ordered probation.[3] But neither can we accept the state's contention that no hearing was required because L.C. had never left the custody of the department, and was not therefore actually on probation. We find this contention overly technical, ignoring as it does the significant increase in L.C.'s freedom that resulted from her reassignment from the institutionalization of a "closed" facility to the significantly less restrictive environment of a halfway house. We conclude that L.C. was placed on administrative probation when released from McLaughlin to Long House.[4]

The next question is whether the requirement in Children's Rule 12(a) of a disposition hearing applies to a court-ordered revocation of administratively granted probation. We hold that it does. In *Morrissey v. Brewer*, 408 U.S. 471, 488, 92 S.Ct. 2593, 2603, 33 L.Ed.2d 484, 498 (1972), the United States Supreme Court ruled that due process[5] requires that a parolee be entitled to show "that circumstances in mitigation [of the act violating parole] suggest that the violation does not warrant revocation." The court ruled that the hearing must be broader than merely determining probable cause that parole conditions are violated. 408 U.S. at 488, 92 S.Ct. at 2603, 33 L.Ed.2d at 498. We can perceive of no reason why due process should not impose the same requirement with regard to juvenile probationers.[6]

It is clear that L.C. was not given a chance to argue about the proper disposition of her case before the superior court.[7] But, the state asserts, she was given that chance before the department's classification committee, which assigned her to the Excelsior School. This argument ignores

---

**3.** We believe that probation cannot be deemed court-ordered under AS 47.10.080(b) unless it is *directly* ordered. It cannot be "triggered" by a decision of the department that the juvenile has successfully completed a rehabilitation program, even if the court judgment, as here, states that institutionalization will end upon such successful completion.

**4.** The department has the authority to grant such probation under AS 47.10.200:

"A juvenile delinquent who by his conduct gives sufficient evidence that he has reformed may be released at any time under the conditions and regulations which the department considers proper, if it appears to the satisfaction of the department that there is a reasonable probability that the juvenile will remain at liberty without violating the law."

**5.** U.S.Const., amend. V: "No person shall ... be deprived of life, liberty or property, without due process of law...." *See also* Alaska Const., art. I, § 7, which uses the same language.

**6.** Indeed, the *Morrissey* rationale may be even more compelling in juvenile revocation proceedings. The theory behind a special criminal justice system for juveniles is that they are not fully developed and hence need guidance more than punishment. *See, e. g.*, Alaska R. Children's P. 1(c): "These rules shall be construed so as to secure for each child the same care, correction and guidance that he should receive from his parents." It is more likely that a juvenile's probation violation, even a relatively serious one, would not warrant severe sanctions, as would be the case with an adult's parole violation. Hence the juvenile needs a greater opportunity to show that probation should not be revoked for a violation of the conditions.

**7.** Judge Hanson specifically told counsel at L.C.'s probation violation hearing, "Now, I want to hear a little bit from both of you, but I don't want the arguments to center around what would be the best disposition and so forth, I want the arguments to center around whether or not there was a violation of the probation."

the fact that L.C. had already been ordered reinstitutionalized by the court before the matter was brought before the classification committee. That committee's function, according to its chairperson, was only to implement the court's order by choosing an appropriate institutional placement. The initial decision of whether to institutionalize was made by the court and not the committee. The affidavit of L.C.'s attorney, uncontradicted by the state, alleges that the judge entered his disposition order after an *ex parte* conference with L.C.'s probation officer. We find, then, that L.C. did not receive the opportunity to be heard by anyone concerning disposition, and must be given that opportunity.

One final question remains: whether the court could properly have dispensed with the disposition hearing under Alaska Rule of Children's Procedure 22(a):

> "(a) *Immediate Order.* Where, upon conclusion of the adjudicative phase of the hearing, the court finds that it has sufficient information available upon which to predicate an effective disposition of the case it shall order such disposition in the manner provided for in this rule." [8]

Judge Hanson did not invoke the rule at the July hearing; he first advanced this justification for his actions at the October hearing on the motion for postconviction relief. We find that he abused his discretion here in not holding a disposition hearing before ordering L.C. reinstitutionalized.[9] Virtually no evidence relevant to a disposition was presented at the probation violation hearing, and the most recent report on L.C., prepared by three McLaughlin workers prior to her release from McLaughlin, painted a relatively encouraging picture of her and recommended her release.[10] We simply cannot conclude that the judge had before him "sufficient information available upon which to predicate an effective disposition" of the case.

The order of institutionalization must therefore be vacated, and the case remanded for a disposition hearing and a new disposition order.[11] We agree with the state that the Department of Health and Social Services has the authority to conduct revocation proceedings when it has granted the probation allegedly violated.[12] However, until such time as the department chooses to establish procedures regarding probation revocation, jurisdiction over such cases will remain in the superior court, to which we remand this case.[13]

REVERSED and REMANDED.

---

8. Alaska R. Children's P. 22(b) provides:

"(b) *Deferred Order.* Where the court finds that it does not have sufficient information upon which to predicate an effective disposition of the case it shall continue the hearing for the purpose of acquiring additional information through reports of social agencies or otherwise. The hearing may be continued for a reasonable time not to exceed 30 days."

9. Because of the great importance of the disposition order, which is the equivalent to the sentence in an adult criminal proceeding, we hold that the trial judge's discretion in not holding a disposition hearing under Children's Rule 22(a) must be narrowly defined. Note that under Alaska R.Crim.P. 32(a), a convicted adult defendant *shall* be afforded the right to make a statement and present mitigation evidence; the sentencing judge has no discretion to waive this phase of the case.

10. Nothing in this report indicated any views as to whether L.C. should be reinstitutionalized if she failed in her probationary placement, or whether a different such placement would be appropriate.

11. The court must include written findings of fact in support of its disposition order pursuant to Alaska R. Children's P. 22(d) which reads:

"(d) *Findings of Fact.* In all orders of disposition, including temporary orders, the court shall provide written findings of fact supporting the disposition ordered."

12. We find this authority to revoke probation to be a corollary to the department's power under AS 47.10.200 to grant it.

13. In the disposition hearing to be held on remand, the court may consider L.C.'s conduct up to the date of that hearing.